United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SINA ABRARI VAJARI, et al.,
Plaintiffs,
v.
JOSEPH B. EDLOW,
Defendants.

Case No. 26-cv-05596-EMC

**ORDER GRANTING PRELIMINARY INJUNCTION**

Docket No. 10

## I. INTRODUCTION

The United States Citizen and Immigration Services ("USCIS") placed a hold on immigration benefits requests from non-citizens of certain countries labeled "high risk." Plaintiffs are Iranian citizens – scientists, researchers, and engineers – with pending applications for work authorization and permanent residence in the United States. Because the Government deems Iran a "high risk" country, Plaintiffs' applications were subject to the hold, which has since been vacated by a federal district court. Plaintiffs move for a preliminary injunction enjoining the Government's hold on deciding Plaintiffs' I-765 Employment Authorization Applications ("EADs") and compelling the Government to adjudicate these applications within ten days.

Having reviewed the briefing and heard oral argument, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction as modified for the reasons stated below.

## II. BACKGROUND

The Policy Memoranda

On June 4, 2025, President Donald Trump issued Presidential Proclamation 10949, Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists

United States District Court
Northern District of California

and Other National Security and Public Safety Threats.

On December 2, 2025, USCIS published Policy Memorandum I, which "directs U.S. Citizenship and Immigration Services (USCIS) personnel to: . . . (2) Place a hold on pending benefit requests for aliens from countries listed in Presidential Proclamation (PP) 10949 . . . pending a comprehensive review, regardless of entry date." Dkt. No. 1-1. On January 1, 2026, USCIS published Policy Memorandum II, which expanded the hold to additional countries, including Iran. Dkt. No. 1 at 56. The Memorandum stated that "A "hold" allows a case to proceed through processing, up to final adjudication. A "final adjudication" refers to the issuance of a final decision on a case, such as an approval, denial, or dismissal." Policy Memorandum II, at n.2. On March 31, 2026, however, USCIS Spokesman Matthew J. Tragesser issued a statement clarifying that "Optional Practical Training (OPT) applications [a type of immigration benefit] for Iranian nationals are banned and will not be processed, in accordance with Presidential Proclamation 10998 which restricts entry and visa issuance for nationals of certain countries." Dkt. No. 1-3, Tragesser Stmt.

<u>The Plaintiffs</u>

Plaintiffs are Iranian citizens with pending Form I-765 and Form I-485 applications. A Form I-485 is an application to register permanent residency, a change in immigration status. Individuals who have filed such an application may submit an I-765 application for an employment authorization document ("EAD"). EADs allow non-citizens to lawfully obtain employment.

The approval of EADs is "within the discretion of USCIS." 8 CFR § 274a.13(a)(1). USCIS will deny applications where "USCIS cannot verify the alien's identity, the alien fails to establish eligibility (including, if applicable, failing to warrant a favorable determination in the exercise of discretion) or abandons the application. *See* U.S. Citizenship and Immigration Services, Policy Manuel https://www.uscis.gov/policy-manual/volume-10-part-a-chapter-4.

All Plaintiffs have already had I-140 (Immigrant Petition for Alien Worker) petitions approved by USCIS. Plaintiffs have been approved in the EB-2 National Interest Waiver ("NIW")

United States District Court
Northern District of California

category, reflecting a determination that Plaintiffs' continued presence and work in the United States serves the national interest. Dkt. No. 1 at 40. Waivers in this category are only approved where USCIS has determined based on a review of "the totality of the evidence" that the non-citizen's "endeavor has substantial merit and national importance," that the non-citizen is "well-positioned to advance [their] endeavor," and that "on balance, it would be beneficial to the United States to waive the job offer and thus the permanent labor certification requirements." *See* U.S. Citizenship and immigration Services, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-second-preference-eb-2.

Since this action was filed, seven Plaintiffs have had their I-765 applications adjudicated. This order concerns only the remaining eight plaintiffs.[1]

1. Plaintiff Sina Abrari Vajari is a citizen of Iran who filed Form I-765 and Form I-485 applications on March 3, 2026. Dkt. No. 1 ¶ 19. Plaintiff Vajari is a recent Stanford Ph.D. graduate who holds an offer of employment from Apple that he cannot begin because his employment authorization remains unadjudicated. *Id.* ¶ 59. He has depleted his personal savings and been informed that his employer may not be able to hold the position indefinitely. *Id.*
2. Plaintiff Mahdi Homaeinezhad is a citizen of Iran who filed Form I-765 and Form I-485 applications on October 22, 2025. Dkt. No. 1 ¶ 21. Plaintiff Mahdi Homaeinezhad holds a Ph.D. in electrical engineering specializing in power electronics for space applications and renewable energy. *Id.* ¶ 59; Dkt. No. 10-1. He has lost multiple job offers contingent on work authorization. *Id.*
3. Plaintiff Ramtin Vamenani is a citizen of Iran who filed Form I-765 and Form I-485 applications on October 31, 2025. Dkt. No. 1 ¶ 25. He is a ph.D. candidate nearing completion of his doctorate but cannot accept postdoctoral research positions offered to him while his application remains unadjudicated. *Id.* ¶ 59.
4. Plaintiff Maryam Javanpour is Plaintiff Vamenani's spouse and a citizen of Iran who filed

[1] Plaintiffs agreed at oral argument that they seek preliminary injunctive relief at this stage only for these eight plaintiffs.

Form I-765 and Form I-485 applications on October 31, 2025. Dkt. No. 1 ¶ 26. She holds a PharmD degree and a master's degree from Mississippi State University. *Id.* ¶ 59. She was formally admitted on December 17, 2025 to the Master of Business Administration program at Mississippi State University, but due to the hold has been unable to commit to enrollment, denying her both her education and a university stipend. *Id.*

5. Plaintiff Arghavan Mohammadhassani is a citizen of Iran who filed Form I-765 and Form I-485 applications on March 19, 2026. Dkt. No. 1 27. Plaintiff Mohammadhassani holds a Ph.D. in electrical and electronic engineering and is employed pursuant to OPT employment authorization that expired June 22, 2026. Dkt. No. 10-1 at 8.

6. Plaintiff Mostafa Goodarzi is a citizen of Iran who filed Form I-765 and Form I-485 applications in October of 2025. Dkt. No. 1 29. Plaintiff Goodarzi holds a Ph.D. in electrical engineering and is employed at Siemens Energy on OPT employment authorization that expires in mid-August 2026. *Id.* ¶ 59.

7. Plaintiff Tooba Varasteh is a citizen of Iran who filed Form I-765 and Form I-485 applications on February 27, 2026. Dkt. No. 1 ¶ 32. She is a postdoctoral researcher currently employed under a J-1 visitor status, which expires in November. *Id.* ¶ 59. She has been the sole source of income for her household, which includes an infant daughter, a U.S. citizen. *Id.*

8. Plaintiff Solmaz Nazaralizadeh is a citizen of Iran who filed Form I-765 and Form I-485 applications on March 12, 2026. Dkt. No. 1 ¶ 34. Plaintiff Solmaz Nazaralizadeh was forced to forgo a paid internship offer in the energy sector that followed a successful internship with the same company. *Id.* ¶ 59.

<u>Litigation and Stay</u>

On June 11, 2026, the United States District Court for the District of Rhode Island, in the case of Dorcas International Institute of *Rhode Island, et al. v. United States Citizenship and Immigration Services, et al.*, Case No. 26-cv-132-JJM-PAS ("Dorcas") entered a judgment vacating the two Policy Memoranda at issue in this case and ordered USCIS to comply with the

United States District Court
Northern District of California

judgment. The next day, USCIS posted an update to its website stating that USCIS will treat the Policy Holds "agency-wide" as if "they are not in effect." *See* June 12, 2026, USCIS Web Update entitled "Court Order on Hold Policies" (available at https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies). USCIS also filed a "Defendants' Status Report Regarding Compliance with Court Order" in which it confirmed that it was implementing the *Dorcas* Order by treating the policy holds as "vacated," "removed" and "no longer in effect." *Dorcas*, ECF No. 41.

Also on June 12, 2026, the Government appealed the *Dorcas* judgment and filed a motion for stay, which the Rhode Island District Court denied. On July 21, the Government filed an Emergency Motion for an Immediate Administrative Stay and a Stay Pending Appeal in the United States Court of Appeals for the First Circuit. The First Circuit has yet to rule on the emergency stay.

## III. DISCUSSION

Before addressing whether a preliminary injunction should be granted, the Court considers threshold issues raised by the Government.

### A. Mootness

The Government argues that Plaintiffs' motion should be denied because the USCIS Memorandum has been vacated by the *Dorcas* action, and the Government, since the *Dorcas* judgment, has treated the hold as "vacated" and "no longer in effect" on a nationwide basis.

The *Dorcas* court's vacatur, and the Government's compliance with that ruling, does not moot the relief sought. The *Dorcas* ruling is under appeal and the Government has sought an immediate stay from the First Circuit while appeal is pending. There is thus uncertainty over whether the vacatur will stand. Courts in this district have granted relief under this circumstance. *See Sunny-Odio v. Trump*, No. 26-CV-04816-RFL, 2026 WL 1763854, at *2 (N.D. Cal. June 18, 2026) (*Dorcus* vacatur no bar to preliminary injunction against same policy memorandum) (quoting *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 60 (D.D.C. 2020) ("[C]ourts routinely grant follow-on injunctions against the Government, even

in instances when an earlier nationwide injunction has already provided plaintiffs in the later action with their desired relief."); *see also Meschi v. Edlow*, No. 26-cv-01993-AGT, 2026 U.S. Dist. LEXIS 94803 (N.D. Cal. Apr. 29, 2026); *Hedayati v. Edlow*, No. 26-cv-04054-VKD, 2026 U.S. Dist. LEXIS 150071 (N.D. Cal. July 7, 2026); *Sadighi v. Edlow*, No. 26-cv-02494-CRB, 2026 U.S. Dist. LEXIS 154845 (N.D. Cal. July 13, 2026).

**B. Joinder and Venue**

The Government argues that Plaintiffs are improperly joined and that venue does not lie for all Plaintiffs because not all of Plaintiffs reside in this district.

Permissive joinder under Rule 20(a), requires that "(A) [plaintiffs] assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Plaintiffs' asserted right to relief arises out of the same transaction, the Policy Memoranda and common questions of law, including the legality of the hold, will arise in deciding their claims. Joinder is proper here. *See Shahi v. Edlow*, No. 5:26-cv-03113-EJD, 2026 U.S. Dist. LEXIS 156175, at *8 (N.D. Cal. July 14, 2026) (joinder of forty-four Iranian nationals challenging adjudication delay based on the Policy Memoranda proper).

Under 28 U.S.C. § 1391(e)(1) "venue is proper in a multi-plaintiff case if any plaintiff resides in the District," *Hedayati*, 2026 U.S. Dist. LEXIS 150071, at *12-13 (quoting *Wang v. Edlow*, No. 25-cv-10689-SVK, 2026 WL 1021204, at *2 (N.D. Cal. Apr. 15, 2026)). Plaintiff Abrari Vajari resided in this District at the time of filing, when venue is assessed. Dkt. No. 1 ¶ 17; Dkt. No. 17 at 8. Plaintiffs thus satisfy the venue requirement.

**C. *Winter* Factors**

To obtain a preliminary injunction, Plaintiffs must show that they: (1) are likely to succeed on the merits, (2) are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20-22 (2008); Fed. R. Civ. P. 65. A plaintiff who shows that

the "balance of hardships [] tips sharply towards [the plaintiff]" need only show "serious questions going to the merits" to satisfy the first Winter requirement. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). As the moving party, Plaintiffs bear the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

1. Likelihood of Success on the Merits

*a. APA Jurisdiction*

Before considering the merits, the Court addresses the Government's argument that there is no APA jurisdiction here. Agency action is reviewable where it is "final agency action." *See Amer. Federation of State County and Municipal Employees, AFL-CIO v. United States Office of Management and Budget*, 807 F. Supp. 3d 1004, 1032 (N.D. Cal. 2025). Numerous federal courts have determined that the Policy Memoranda at issue here are likely to be found final agency actions subject to judicial review. *See Hedayati v. Edlow,* No. 26-cv-04054-VKD, 2026 U.S. Dist. LEXIS 150071, at *9 (N.D. Cal. July 7, 2026) ("This very issue of jurisdiction has been well-vetted by other courts in similar litigation in this District and across the country."); *Sadighi v. Edlow*, No. 26-cv-02494-CRB, 2026 U.S. Dist. LEXIS 154845, at *5 (N.D. Cal. July 13, 2026); *Behdin v. Edlow*, No. 26-cv-00566-SVK, 2026 U.S. Dist. LEXIS 84320, at *62 (N.D. Cal. Apr. 16, 2026); *Doe v. Edlow*, No. 2:26-cv-494, 2026 U.S. Dist. LEXIS 148483, at *69 (S.D. Ohio July 6, 2026). These courts have found that the Policy Memoranda place an "indefinite moratorium on applications for immigration benefits from [] 39 countries" that has "practical, legal consequences," for Plaintiffs. *Bowser v. Noem*, Civil Action No. 26-CV-10382-AK, 2026 U.S. Dist. LEXIS 40770, at *18 (D. Mass. Feb. 27, 2026). This Court agrees. The Policy Memoranda constitute final agency action, such that APA jurisdiction lies.

*b. Unlawful Withholding*

Under Section 706(1) of the APA, a court may "compel agency action unlawfully withheld." 5 U.S.C. § 706(1). A plaintiff can proceed under Section 706(1) where they "assert[] that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The Ninth Circuit distinguishes agency withholding from

agency delay. *Shahi v. Edlow*, 2026 U.S. Dist. LEXIS 156175, at *9 (N.D. Cal. July 14, 2026). Agency delay occurs when "one expects that, with the passage of time (maybe even an unreasonable amount of time), the action eventually will be completed." *Al Otro Lado v. Exec. Office for Immigr. Review*, 138 F.4th 1102, 1122 (9th Cir. 2025). By contrast, withholding occurs "when an agency refuses to accept, in any form, a request that it take a required action." *Id.* Such refusal violates APA's requirement that agencies 'conclude a matter presented to it.'" *See id.* (quoting 5 U.S.C. § 555(b)).

The Government has conceded in multiple other proceedings that "it has a duty to act on Plaintiff's applications for employment authorization within a reasonable time and that the hold on adjudication is indefinite." *Behdin v. Edlow*, No. 26-cv-00566-SVK, 2026 U.S. Dist. LEXIS 84320, at *37 (N.D. Cal. Apr. 16, 2026); *see also Mitishov v. Trump*, Civil Action No. 1:25-cv-02113-RDM (D.D.C. Sept. 5, 2025) ("USCIS is not contesting that they have a duty to adjudicate. In fact, there is no question that they do have a duty to adjudicate. The only question is whether they have a duty to do so within any given time."); *accord CRVQ v. United States Citizenship & Immigration Servs.*, No. CV 19-8566-CBM-(AGRx), 2020 U.S. Dist. LEXIS 252515, at *19 (C.D. Cal. Sep. 24, 2020) ("Defendants owe a nondiscretionary duty to adjudicate Plaintiffs' EAD Applications."). The Government owes Plaintiffs a mandatory duty to adjudicate their EAD applications but has stated that under the current policy benefits applications from Iranian nationals "are banned and will not be processed." Tragesser Stmt. This evidence is sufficient to show a likelihood of success on the merits of Plaintiff' withholding claim. *Shahi*, 2026 U.S. Dist. LEXIS 156175, at *12. Courts in this district have also found the Government's actions to constitute unreasonable delay. *See e.g., Behdin v. Edlow*, 2026 U.S. Dist. LEXIS 84320, at *41 (N.D. Cal. Apr. 16, 2026).

Given that, as discussed below, the balance of the equities tips sharply in Plaintiffs' favor, Plaintiffs need only show a serious question on the merits, a standard that Plaintiffs more than meet here. *Wild Rockies*, 632 F.3d at 1132.

United States District Court
Northern District of California

2. Irreparable Harm

The loss of work authorization "goes beyond ordinary economic injury and constitutes irreparable injury." *Hedayati v. Edlow*, No. 26-cv-04054-VKD, 2026 U.S. Dist. LEXIS 150071, at *17 (N.D. Cal. July 7, 2026) (collecting cases); *Doe v. Noem*, 778 F. Supp. 3d 1151, 1164 (W.D. Wash. 2025) (collecting cases). Here, multiple plaintiffs face the loss of work authorization within "weeks and months." Their declarations describe the toll this has taken on their careers, families, and personal lives. *See generally* Dkt. No. 10-1. Many of the positions that Plaintiffs have secured, but cannot take without adjudication of the applications, are highly competitive and constitute decisive career moments that cannot be replaced.

The Government does not dispute that these losses are irreparable injury but argues only that Plaintiffs cannot prove that the delay in adjudication was caused by the USCIS hold. First, the Government argues that USCIS has continued to process applications even during the hold and that the only impact of the hold was to delay the ultimate issuance of benefits. The Government relies on language from Policy Memorandum II that the "hold" "allows a case to proceed through processing, up to final adjudication" where "final adjudication" "refers to the issuance of a final decision on a case, such as an approval, denial, or dismissal." Policy Memorandum II, at n.2. But Plaintiffs have pointed to a subsequent public statement by USCIS Spokesman Tragesser that "Optional Practical Training (OPT) applications for Iranian nationals are banned and will not be processed, in accordance with Presidential Proclamation 10998 which restricts entry and visa issuance for nationals of certain countries." Dkt. No. 1-3, Tragesser Stmt. While the Tragesser statement only explicitly states that processing has ceased for OPT applications, the statement provides no limiting principle for other applications. The statement suggests that USCIS was in fact not processing any immigrant benefit applications subject to the hold, as opposed to processing applications but delaying the ultimate benefit issuance. *See Shahi v. Edlow*, 2026 U.S. Dist. LEXIS 156175, at *2-3, 12 (N.D. Cal. July 14, 2026) (citing Tragesser's statement as evidence that USCIS is holding applications—not limited to OPTs—in abeyance in potential violation of USCIS mandatory duty to adjudicate).

The record reflects that the relevant hold was in place from January 1, 2026 to June 12, 2026, almost six months. Plaintiffs' applications were filed in October, 2025 and in February and

March of 2026 and have been pending between five to nine months. A significant portion of the time that these applications were pending was while the hold was in place. It appears that the processing time when these applications were filed was substantially shorter than the period of time these plaintiffs have now waited. The Government argues that Plaintiffs applications have not yet been adjudicated for reasons unrelated to the hold, citing the fact that there are individual and fact-specific factors in making benefits determinations. However, the Government does not proffer any individual and fact-specific reasons adjudication has been delayed unrelated to the hold for any of the Plaintiffs at issue here. On this preliminary record, Plaintiffs have demonstrated a basis to find a causal nexus between the hold and the failure to adjudicate their applications.

The Government also argues that there is no "guarantee" that Plaintiffs' applications will be approved. But the harm at issue is the Government's failure to *adjudicate* their applications as required by law, not necessarily its failure ultimately to approve them. Moreover, the Government does not suggest any reason that the EADs at issue here would not be approved. The record reflects that Plaintiffs have already been granted I-140 applications under the EB-2 National Interest Waiver. This reflects a USCIS determination that Plaintiffs' "endeavor has substantial merit and national importance," that Plaintiffs are "well-positioned to advance [their] endeavor," and that "on balance, it would be beneficial to the United States to waive the job offer and thus the permanent labor certification requirements." *See* U.S. Citizenship and immigration Services, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-second-preference-eb-2.

Plaintiffs have sufficiently shown that the delay in adjudicating their work authorizations constitutes irreparable harm.

3. Balance of the Equities and the Public Interest

When the Government is a party, the final *Winter* factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[T]here is generally no public interest in the perpetuation of unlawful agency action." *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 976 (N.D. Cal. 2025). And there is a strong public interest in the timely adjudication of work authorization applications,

particularly those of highly skilled workers, whose presence and work in the United States have already been deemed in the national interest.

The Government does not contend that adjudicating these applications would impose any burden; in fact, the Government submits that it is already in the process of adjudicating them. Nor does the Government raise *e.g.* any national security concerns; on the contrary, USCIS has already determined that the national interest favors the grant of work authorization for these Plaintiffs. The Government offers only a single reason that the public interest would weigh against relief: that granting relief here would "merely place Plaintiffs ahead of other applicants." Opp. at 16. But the "leapfrogging" argument carries no weight here, where "other applicants have already 'leapfrogged' ahead of Plaintiffs because of the adjudicative holds." *Shahi v. Edlow*, 2026 U.S. Dist. LEXIS 156175, at *15 (N.D. Cal. July 14, 2026).

The balance of the equities thus tips sharply in Plaintiffs' favor.

**D. Remedy**

Plaintiffs seek injunctive relief enjoining the Government from applying the Policy Memoranda hold to Plaintiffs' I-765 applications and directing the Government to adjudicate the remaining I-765 applications within ten days. The Government vigorously opposes injunctive relief mandating USCIS to adjudicate Plaintiffs' applications in ten days (or on any timeline). The Government suggests that this Court should merely enjoin the Government from applying the Policy Memoranda to these Plaintiffs' I-765 applications and leave USCIS to adjudicate their applications in its own time.

Courts in this and other districts have taken different approaches to the scope of injunctive relief in these cases. A growing number of courts have declined to order a timeline for adjudication and have instead ordered USCIS to adjudicate plaintiffs' applications "in a manner consistent with USCIS's processes absent the enjoined policies." *Sunny-Odio v. Trump*, No. 26-CV-04816-RFL, 2026 WL 1763854, at *2 (N.D. Cal. June 18, 2026); *Hedayati v. Edlow*, No. 26-cv-04054-VKD, 2026 U.S. Dist. LEXIS 150071, at *22 (N.D. Cal. July 7, 2026) (same); *Sadighi v. Edlow*, No. 26-cv-02494-CRB, 2026 U.S. Dist. LEXIS 154845, at *8 (N.D. Cal. July 13, 2026) (same); *Shahi v. Edlow*, 2026 U.S. Dist. LEXIS 156175, at *18 (N.D. Cal. July 14, 2026) (same).

Other courts have mandated adjudication timelines of varying length. *See Roghaee v. Mullin*, No. CV 26-4160-JFW(DMKx), 2026 U.S. Dist. LEXIS 98297, at *3-4 (C.D. Cal. May 4, 2026) (adjudication within 10 days); *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 U.S. Dist. LEXIS 35751, at *77 (N.D. Cal. Feb. 20, 2026) (adjudication within 30 days); *Behdin v. Edlow*, No. 26-cv-00566-SVK, 2026 U.S. Dist. LEXIS 84320, at *84 (N.D. Cal. Apr. 16, 2026) (adjudication within 30 days for any applications pending more than 180 days [six months] consistent with the "normative expectation" set forth in 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application").

The role of preliminary injunctive relief is to preserve the status quo. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). While putting Plaintiffs "back in their place in line" by directing USCIS to proceed "in a manner consistent with USCIS's processes absent the enjoined policies" could be an equitable restorative remedy, the Government represented at oral argument that there is no discrete line and that it can make no representation as to when Plaintiffs' applications will be processed. The Government submits a declaration that the average processing time is now approximately 12 months for I-765 applications based on pending I-485 applications. Dkt. No. 17-2, Bays Decl. ¶ 10. However, Plaintiffs have pointed out that USCIS provides historical median processing times for applications, including I-765 applications based on pending I-485 applications. USCIS lists the median processing time for these applications as 2.2 months in 2025 and 4.6 months in the 2026 fiscal year (through May 31, 2026). USCIS, Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year, https://egov.uscis.gov/processing-times/historic-pt. While current processing times as of July may be longer, Plaintiffs filed their applications when processing times were considerably shorter – by a magnitude of almost 3x to 6x. This evidence suggests that but for the hold, Plaintiffs' applications (which have been pending for five to nine months) would have been processed on these shorter timelines. Also, the wait time experienced by the eight plaintiffs herein either exceeds or approaches (within 30 days of) the timeline contemplated by Congress. *See Behdin, supra*. The Court therefore finds it is appropriate to order USCIS to adjudicate the eight Plaintiffs'

I-765 applications within 30 days. *See Varniab, supra*.

## IV. CONCLUSION

Plaintiffs' motion for Preliminary Injunction is **GRANTED**. The Government is (1) enjoined from applying the Policy Memoranda hold to Plaintiffs' I-765 applications; (2) directed to adjudicate the remaining I-765 applications within **30** days; and (3) directed to deliver EADs to all approved Plaintiffs immediately after adjudication.

**IT IS SO ORDERED**.

Dated: 7/31/2026

EDWARD M. CHEN
United States District Judge