United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINA ABRARI VAJARI, et al.,<br>Plaintiffs,<br>v.<br>JOSEPH B. EDLOW,<br>Defendant. | Case No. 26-cv-05596-EMC<br>**ORDER GRANTING MOTION TO DISMISS**<br>Docket No. 24 |

Plaintiffs, Iranian citizens seeking permanent residence in the United States, filed this case after the United States Citizen and Immigration Services ("USCIS") placed a hold on immigration benefits requests from non-citizens of certain countries labeled "high risk," including Iran. At the time of filing, Plaintiffs had pending applications for Employment Authorization (Form I-765) and Adjustment of Status (Form I-485). In June 2026, a federal district court for the District of Rhode Island vacated the hold policy at issue in this case. In July 2026, this Court issued a preliminary injunction requiring USCIS to adjudicate Plaintiffs' Form I-765 applications within 30 days. USCIS did so. In August 2026, the government filed a motion to dismiss which is now before the Court.

For the reasons below, the Court **GRANTS** Defendant's motion. Dismissal is without prejudice.

## I. <u>BACKGROUND</u>

### A. The Policy Memoranda

On December 2, 2025, USCIS published Policy Memorandum I, which "directs U.S. Citizenship and Immigration Services (USCIS) personnel to . . . [p]lace a hold on pending benefit

requests for aliens from [certain] countries . . . pending a comprehensive review, regardless of entry date" and "[c]onduct a comprehensive re-review of approved benefits requests for aliens from [those] countries . . . who entered the United States on or after January 20, 2021." PM-602-0192, available at https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf.

On January 1, 2026, USCIS published Policy Memorandum II, which expanded the hold and comprehensive re-review policy to additional countries, including Iran. Dkt. No. 1 ("Compl.") ¶ 56; *see also* PM-602-0194, available at https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf. The Memorandum stated that "[a] 'hold' allows a case to proceed through processing, up to final adjudication. A 'final adjudication' refers to the issuance of a final decision on a case, such as an approval, denial, or dismissal." Policy Memorandum II, at n.2. On March 31, 2026, USCIS Spokesman Matthew J. Tragesser issued a statement clarifying that "Optional Practical Training (OPT) applications [a type of immigration benefit] for Iranian nationals are banned and will not be processed, in accordance with Presidential Proclamation 10998 which restricts entry and visa issuance for nationals of certain countries." Dkt. No. 1-3, Tragesser Stmt. But the spokesman also clarified that the agency would "continue to pause *decisions* on immigration applications" for noncitizens from "high-risk countries," not necessarily pausing all processing. *Id.*

On June 11, 2026, the United States District Court for the District of Rhode Island, in the case of *Dorcas International Institute of Rhode Island, et al. v. United States Citizenship and Immigration Services, et al.*, Case No. 26-cv-132-JJM-PAS ("*Dorcas*") entered a judgment vacating the two Policy Memoranda and the policies contained therein, including the benefits hold and the comprehensive re-review. 2026 WL 1695954 (D.R.I. June 11, 2026). The next day, USCIS posted an update to its website stating that USCIS "strongly disagrees" with the judgment but will treat the Policy Holds "agency-wide" as if "they are not in effect." *See* June 12, 2026, USCIS Web Update entitled "Court Order on Hold Policies" (available at https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies). USCIS also filed a

"Defendants' Status Report Regarding Compliance with Court Order" in which it confirmed that it was implementing the *Dorcas* Order by treating the policy holds as "vacated," "removed" and "no longer in effect." *Dorcas*, ECF No. 41.

Also on June 12, 2026, the Government appealed the *Dorcas* judgment and filed a motion for stay, which the Rhode Island District Court denied. 2026 WL 2042424 (D.R.I. July 15, 2026). On July 21, the Government filed an Emergency Motion for an Immediate Administrative Stay and a Stay Pending Appeal in the United States Court of Appeals for the First Circuit. On August 14, the First Circuit granted the stay in part, staying the injunction of *only* the comprehensive re-review policy for already-approved benefits and declining to stay the injunction of the hold policy. *Dorcas*, 2026 WL 2364384 (Mem) (1st Cir. Aug. 14, 2026). The appeal on the merits remains pending.

**B. The Plaintiffs and Form I-485 Applications**

Plaintiffs are Iranian citizens with I-140 (Immigrant Petition for Alien Worker) petitions approved by USCIS. Plaintiffs were approved in the EB-2 National Interest Waiver ("NIW") category, reflecting a determination that their continued presence and work in the United States serves the national interest. Dkt. No. 1 ("Compl.") ¶ 40. At the time this case was filed on June 10, 2026, there were sixteen Plaintiffs. *Id.* ¶¶ 19–34.

After having their I-140 petitions approved, Plaintiffs became eligible to adjust their status to permanent residency and obtain work authorization. They filed Form I-765 and Form I-485 applications. A Form I-485 is an application for permanent residency. Individuals who have filed an I-485 may also submit an I-765 application for an employment authorization document ("EAD"). EADs allow non-citizens to lawfully obtain employment. At the time of filing, fifteen Plaintiffs had pending I-765s, and all sixteen had pending I-485s. The plaintiff who did not have a pending I-765, Payman Sharafianardakani, did not file an I-765. *Id.* ¶ 24. Between the filing of the action and this Court's order granting a preliminary injunction on July 31, 2026, seven Plaintiffs had their I-765 applications adjudicated. One of these Plaintiffs dismissed her claims. Dkt. No. 22. On July 31, 2026, this Court directed the Government to adjudicate the eight remaining I-765 applications within 30 days. Dkt. No. 23 ("PI Order") at 13. The I-765

applications are no longer at issue. Dkt. No. 24 ("Mot.") at 9 n.1.

After the Court issued the PI Order, several Plaintiffs had their I-485 applications adjudicated. In the parties' statement before the hearing on the instant motion, the parties stated that six Plaintiffs still have pending I-485 applications. Dkt. No. 32. On November 11, 2026, Plaintiffs voluntarily dismissed the claims of the nine Plaintiffs who no longer have pending applications. Dkt. No. 36. Thus, only the following six Plaintiffs remain in the case.

1. Plaintiff Sina Abrari Vajari is a citizen of Iran who filed Form I-765 and Form I-485 applications on March 3, 2026. Compl. ¶ 19.
2. Plaintiff Naiyer Shokri is a citizen of Iran who filed Form I-765 and Form I-485 applications on October 2, 2025. *Id.* ¶ 23.
3. Plaintiff Payman Sharafianardakani is Plaintiff Shokri's spouse and a citizen of Iran who filed a Form I-485 application on October 2, 2025. *Id.* ¶ 24.
4. Plaintiff Arghavan Mohammadhassani is a citizen of Iran who filed Form I-765 and Form I-485 applications on March 19, 2026. *Id.* ¶ 27.
5. Plaintiff Mostafa Goodarzi is a citizen of Iran who filed Form I-765 and Form I-485 applications in October of 2025. *Id.* ¶ 29.
6. Plaintiff Solmaz Nazaralizadeh is a citizen of Iran who filed Form I-765 and Form I-485 applications on March 12, 2026. *Id.* ¶ 34.

They have each had their I-765 applications adjudicated, but their I-485 applications remain pending. At the time of this order, they have been pending for between 8 and 13.5 months.

Adjustment of status is governed by 8 U.S.C. § 1255(a), which provides:

> a) Status as person admitted for permanent residence on application and eligibility for immigrant visa
>
> > The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

Form I-485 allows applicants with underlying legal status, who are already in the United

States, to adjust their status to that of a permanent resident, otherwise known as a green card. Compl. ¶ 46. Legal permanent residency carries with it the right to travel to and from the United States. *See id.* ¶ 47; 8 U.S.C. § 1182(d)(5)(A). After completing the Form I-485, filing supporting documents, and paying the applicable fees, the applicant will receive a biometrics appointment date. Compl. ¶ 48. Once an applicant has been fingerprinted, USCIS may schedule an interview to further evaluate the applicant's eligibility for adjustment of status. USCIS may also decide to waive the interview. *Id.* Following the interview, USCIS will either request more information or make a decision on the application in the form of an approval or a denial. *Id.* ¶ 49. If the I-485 application is approved, the applicant will receive a Notice of Approval. For each decision approving an adjustment of status application, USCIS uses an immigrant visa number allocated by the State Department. *Id.* ¶ 50. If the application is denied, the applicant must be notified of the reasons for the denial and of the right to appeal. *Id.* ¶ 51. At oral argument on November 5, 2026, counsel for Plaintiffs stated that three of the Plaintiffs with pending I-485 applications had received interviews, but three had not.

## II. <u>LEGAL STANDARD</u>

Defendant's motion to dismiss is predicated on Federal Rules of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction due to a jurisdiction-stripping provision in the underlying statute), 21 (improper joinder), 12(b)(3) (improper venue), and 12(b)(6) (failure to state a claim). Because the Court dismisses based on failure to state a claim, it need not and does not address the other grounds on which Defendant moves to dismiss.

Under Rule 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief. To overcome a Rule 12(b)(6) motion, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must

contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III. <u>DISCUSSION</u>

Defendant makes four arguments in its motion: 1) that this Court lacks jurisdiction to review the government's delay in adjudicating applications for adjustment of status due to a jurisdiction stripping provision in the Immigration and Nationality Act ("INA"); 2) that Plaintiffs are improperly joined; 3) that venue is improper for those Plaintiffs who do not reside in this district; and 4) that Plaintiffs have failed to plausibly allege that their applications have been unreasonably delayed. Because the Court finds that Plaintiffs' claims must be dismissed for failure to allege unreasonable delay, it does not address the arguments related to lack of jurisdiction, joinder, or venue.

In the Complaint, Plaintiffs challenged the two Policy Memoranda and USCIS's resulting policy not to adjudicate immigration benefits requests for non-citizens from countries including Iran. Those Policy Memoranda have been vacated and are no longer in effect. *See Dorcas*, 2026 WL 1695954, at *2. While Plaintiffs say that their claim is unlawful withholding, not unreasonable delay, they point to no evidence other than the now-vacated hold policy to support a claim that "USCIS categorically refused to adjudicate their applications." Dkt. No. 25 ("Opp'n") at 16. Indeed, as noted above, a number of the Plaintiffs in this suit have had their I-485 applications adjudicated. Accordingly, the Court analyzes Plaintiffs' claims as claims of unreasonable delay.

The APA mandates that administrative agencies adjudicate matters "within a reasonable

time." 5 U.S.C. § 555(b). A court may "compel agency action . . . unreasonably delayed" where the agency (1) has a "clear, certain, and mandatory duty" and (2) "has unreasonably delayed in performing such duty." *Vaz v. Neal*, 33 F.4th 1131, 1135–36 (9th Cir. 2022) (citing 5 U.S.C. § 706(1)). Courts in the Ninth Circuit apply the "*TRAC* factors," a six-factor test to determine whether an agency's delay in adjudicating an application is unreasonable under the APA. *See Telecomms. Rsch. & Action Ctr. v. F.C.C.* (*TRAC*), 750 F.2d 70, 79–80 (1984); *Indep. Mining Co.*, 105 F.3d 502, 507 (9th Cir. 1997) (adopting *TRAC* factors in Ninth Circuit).

The six factors are:

(1) Whether the time the agency takes to make its decision is governed by a rule of reason;

(2) Whether Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, such that the statutory scheme may supply content for this rule of reason;

(3) Whether the delays that might be reasonable in the sphere of economic regulation are less tolerable because human health and welfare are at stake;

(4) The effect of expediting delayed action on agency activities of a higher or competing priority;

(5) The nature and extent of the interests prejudiced by the delay; and

(6) Whether the agency action is unreasonably delayed notwithstanding any lack of impropriety by the agency.

*TRAC*, 750 F.2d at 79–80. The Court examines these factors.

**1. *TRAC* Factor #1: Rule of Reason and Length of Delay**

First, the Court considers whether USCIS describes a rule of reason governing processing of I-485 applications. "There is a rule of reason when there is an identifiable rationale for the agency's actions." *Baizakova v. Jaddou*, 2024 WL 3063227, at *5 (C.D. Cal. June 14, 2024) (citing *Ray v. Cuccinelli*, 2020 WL 6462398, at *9 (N.D. Cal. Nov. 3, 2020)).

Defendant states that USCIS adjudicates applications "generally in the order they are received," referring cases for "further vetting where certain criteria are met." Mot. at 24. Courts have frequently recognized that ordering adjudications by filing date is a rule of reason. *See, e.g.*,

*Ray*, 2020 WL 6462398, at *8–9; *Nibber v. U.S. Citizenship & Immigr. Servs.*, 2020 WL 7360215, at *6 (D.D.C. Dec. 15, 2020); *Muvvala v. Wolf*, 2020 WL 5748104, at *3 (D.D.C. Sep. 25, 2020); *Verma v. U.S. Citizenship & Immigr. Servs.*, 2020 WL 7495286, at *6 (D.D.C. Dec. 18, 2020). Plaintiffs do not dispute that a first-in-first-out approach would supply a rule of reason. Instead, they argue that for much of the period during which Plaintiffs' applications were pending, they "were not being processed in any order" due to the hold policy. Opp'n at 18. They say that a policy that "removes applications from the [adjudication] process based on nationality" cannot supply a rule of reason. But the Policy Memoranda on their own terms did not remove applications from the process – the Memorandum that expanded the "hold" to Iran stated that "[a] 'hold' allows a case to proceed through processing, up to final adjudication." Policy Memorandum II, at n.2.

In any case, Plaintiffs do not dispute that their applications are now proceeding through the process, as evidenced by adjudication of all of their I-765 applications and all but six of their I-485 applications. It is true that some Plaintiffs whose I-485 applications are still pending filed their applications *before* those Plaintiffs whose I-485 applications have been adjudicated, undermining Defendant's statement that applications are generally adjudicated in the order in which they are received. For instance, Plaintiffs Shokri and Sharafianardakani filed their I-485 applications on October 2, 2025. Compl. ¶¶ 23, 24. Their applications remain pending, while others, filed more recently, have been adjudicated. However, even where plaintiffs have identified comparator cases in which later-filed I-485 applications were adjudicated before theirs, district courts within the Ninth Circuit have held that some inconsistency in processing order does not, on its own, create an unreasonable delay. *See, e.g.*, *Vooda v. Edlow*, 2026 WL 1846661, at *4 (W.D. Wash. June 26, 2026) (19-month delay in adjudication of I-485 was reasonable); *Liu v. Denayer*, 2022 WL 17370527, at *3–4 (C.D. Cal. July 18, 2022) (18-month delay was reasonable).

More critical at this stage is the length of delay. The first *TRAC* factor "requires courts to consider both the length of the delay and the reasons for the delay." *Shahijani v. Laitinen*, 2023 WL 6889774, at *4 (C.D. Cal. Oct. 6, 2023) (citing *Poursohi v. Blinken*, 2021 WL 5331446, at *5 (N.D. Cal. Nov. 16, 2021)). The Plaintiffs who remain filed their I-485 applications between

October 2, 2025 and March 19, 2026. Compl. ¶¶ 19, 23–24, 27, 29, 34. At the time they filed this action on June 10, 2026, their applications had been pending between about 3 and 8 months. At the time of this order, they have been pending for between 8 and 13.5 months.[1]

In general, courts have held that delays in adjudicating I-485 applications of up to four years are reasonable. *See Qureshi v. Napolitano*, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012). However, in those cases, the holds on I-485 applications were "due to terrorist-related inadmissibility findings" *Id.*; *see also Singh v. Napolitano*, 909 F. Supp. 2d 1164, 1167, 1175 (E.D. Cal. 2012) (collecting cases and evaluating whether a delay of between four and five years was unreasonable where the application had been delayed due to a terrorist-related inadmissibility finding). Here, in contrast, Plaintiffs' applications were delayed because they are from Iran, not because of any inadmissibility finding. Because courts look to "the source of the delay – e.g., the complexity of the investigation," *id.*, in assessing unreasonableness, cases involving delays related to terrorist-related inadmissibility findings may be inapposite. But even in cases *not* involving terrorist-related inadmissibility findings, courts have found that delays of up to two years are reasonable. *See Liu*, 2022 WL 17370527, at *4 (18-month delay was reasonable); *Ram v. Edlow*, 2026 WL 2224709, at *3 (W.D. Wash. Aug. 3, 2026) (18-month delay was reasonable).

Absent a bright-line rule, these decisions reflect general agreement among courts which have addressed the issue that delays of at least 18 months – particularly for an I-485 application where no terrorist-related inadmissibility finding is at issue – are not unreasonable, at least certainly not as a per se matter. At this juncture, the delays in adjudication of Plaintiffs' applications fall short of unreasonable as found by courts thus far.

It is true that for I-485 applications for employment-based adjustment, as are relevant here, the average processing time is much shorter than for other types of applications. For instance, the median time to process I-485 applications for employment-based adjustment of status was 7.2

[1] The parties dispute whether delay should be measured as of the time of the filing of the complaint or as of this order. Courts take differing approaches. *See, e.g.*, *Liu*, 2022 WL 17370527, at *4 (measuring length of delay to time of filing); *c.f. Zargarian v. Oudkirk*, 2025 WL 1263531, at *7 (E.D. Cal. May 1, 2025) ("[T]he length of delay [is] measured from the last agency action to the date this order issues."). Here, the Court measures the delay as of this order but would reach the same result under either approach.

months in FY 2025 and 6.0 months in FY 2026. USCIS, Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year, https://egov.uscis.gov/processing-times/historic-pt (last visited Nov. 23, 2026). Currently, 80% of I-485s for employment-based adjustment are completed within 9.5 months. USCIC, Case Processing Times, https://egov.uscis.gov/processing-times (last visited Nov. 23, 2026). Thus, relative to others, Plaintiffs' waiting time is substantial and above average, but not by much. To be sure, Plaintiffs Shokri, Sharafianardakani, and Goodarzi, who have been waiting over a year, are approaching the potential threshold of reasonableness: "With each month that passes, the delay approaches the tipping point." *Velasquez Cortes v. USCIS*, 2026 WL 2020998, at *4 (N.D. Cal. July 13, 2026).

Accordingly, the first *TRAC* factor weighs in slightly in favor of Defendant at this time.

**2. *TRAC* Factor #2: Congressional Timetable**

The second *TRAC* factor asks "whether Congress has provided an indication of the speed with which it expects an agency to act." *Reyes Briseda v. Lehman*, 2024 WL 2112864, at *5 (N.D. Cal. May 8, 2024). Congress has indicated that its "sense" is that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). This provision is aspirational and non-binding. *See Infracost Inc. v Blinken,* 732 F. Supp. 3d 1240, 1256 (S.D. Cal. 2024). Aspirational timetables, however, are entitled to some weight in the TRAC analysis. *Id.* While the second *TRAC* factor does not convert Plaintiffs' delay into an unreasonable one, it tilts in Plaintiffs' favor.

**3. *TRAC* Factors #3 & 5: Health, Welfare, and Prejudice**

The third and fifth *TRAC* factors present "overlapping" considerations, *Indep. Mining Co.*, 105 F.3d at 509, focused on "whether human health and welfare are at stake and the nature and extent of the interests prejudiced by the delay." *Fang Yan v. Dir. of L.A. Asylum Off. for the U.S. Citizenship & Immigr. Servs.*, 2023 WL 4053410, at *5 (C.D. Cal. June 16, 2023). They are thus ordinarily considered together. *Indep. Mining Co.*, 105 F.3d at 509.

Prejudice is "significantly reduced" when the applicant may live and work in the United States while the application is pending. *Kulakov v. USCIS*, 2024 WL 4804098, at *6 (E.D. Cal.

Nov. 15, 2024). In their Complaint, Plaintiffs allege that they cannot begin employment that they have been offered, cannot travel abroad to visit family, cannot renew driver's licenses, and cannot obtain REAL ID because their documentation of lawful status lapses with their underlying nonimmigrant status. Compl. ¶¶ 59–60. They "face lost job offers, depleted savings, mounting debt, and an inability to cover basic living expenses." *Id.* ¶ 59. They have had to miss the funerals and weddings of close family members, and have gone years without being able to see parents and grandparents. *Id.* ¶ 60.

However, now that Plaintiffs have received employment authorization, the harm to them is significantly reduced because they are able to work while their applications are pending. It is true that some cognizable prejudice remains – for instance, Plaintiffs cannot travel outside of the United States – but it is less severe than before their I-765 applications were adjudicated.

On balance, these factors do not support relief yet. The inability to travel or obtain a REAL ID is a real prejudice, but standing alone it does not render a delay of 8 to 13.5 months unreasonable. As with the other factors, however, the weight of this prejudice grows with the length of the delay. The longer Plaintiffs' I-485 applications remain pending and the longer the collateral deprivation (e.g., ability to travel), the more these factors will favor relief.

**4. *TRAC* Factor #4: Effect of Expediting Delayed Action**

The fourth factor considers "the effect of expediting delayed action on activities of a higher or competing priority." *Fang Yan*, 2023 WL 4053410, at *5. Defendant argues that Plaintiffs seek priority over applicants who filed first. Mot. at 22. This Court rejected that argument in its order directing Defendant to adjudicate Plaintiff's employment authorization applications, holding that other applicants "have already 'leapfrogged' ahead of Plaintiffs because of the adjudicative holds." PI Order at 11. The same is true here. During the time of the hold, applicants who were not subject to the hold may have been able to "leapfrog" ahead of Plaintiffs, so expediting adjudication of Plaintiffs' claims would, in all likelihood, simply put them back in their place in line. Accordingly, this factor likely counsels in favor of Plaintiffs.

**5. *TRAC* Factor #6: Impropriety**

The sixth *TRAC* factor considers "whether there was any impropriety by the agency."

United States District Court
Northern District of California

*Reyes Briseda*, 2024 WL 2112864, at *7 (N.D. Cal. May 8, 2024). Plaintiffs argue that the fact that a federal court has declared the policies that have caused this delay unlawful indicates impropriety. In addition, Plaintiffs argue that USCIS continued to accept filing fees for applications it had no intention of adjudicating. Opp'n at 20. While the Court need not find impropriety to find that a delay was unreasonable, the fact that the policy hold underlying the delay has been held unlawful may could indicate some degree of impropriety. *See Yousefisahi v. Edlow*, 2026 WL 2886016, at *11 (N.D. Cal. Sep. 25, 2026) (holding that if the unlawful policy memoranda "contributed to the delay in resolving [p]laintiff's application[,] such delay could constitute impropriety"). However, there is no showing of impropriety causing the current delay after the *Dorcas* order, and the fact that nine of the original Plaintiffs in this action have had their applications adjudicated cuts against a finding of impropriety. This factor is, at this point, neutral.

* * *

Weighing the factors together, the Court concludes that the Complaint does not plausibly allege unreasonable delay at this juncture. The delays, between 8 and 13.5 months as of this order, fall within the range that courts have thus far found reasonable. The harm to Plaintiffs, while cognizable, is significantly less severe now that they have work authorization. The second and fourth favors slightly favor Plaintiffs, but they do not outweigh the first factor, which is the "most important." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017).

The Court's conclusion reflects the state of the record and the length of the delays as they stand today – it is not a judgment that these petitions may languish indefinitely. The claims differ in strength across Plaintiffs, and the balance shifts with time as the delay is prolonged. Should the agency continue to delay adjudication, a renewed challenge may well warrant a different result. For that reason, dismissal is without prejudice.

## IV. CONCLUSION

Because Plaintiffs have failed to plausibly allege unreasonable delay at this juncture, the Court **GRANTS** Defendant's Motion to Dismiss. Dismissal is **WITHOUT PREJUDICE**. The

Court need not and does not address Defendant's arguments related to the INA's jurisdiction-stripping provision, joinder, or venue.

**IT IS SO ORDERED**.

Dated: November 23, 2026

EDWARD M. CHEN
United States District Judge